No. 24-1032

# In the United States Court of Appeals for the Ninth Circuit

————

EMILY DEMBICZAK,
PLAINTIFF-APPELLEE

*v.*

FASHION NOVA, LLC,
DEFENDANT-APPELLANT

————

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON, NO. 2:23-CV-00408-LK DISTRICT JUDGE LAUREN KING, PRESIDING*

————

## OPENING BRIEF FOR DEFENDANT-APPELLANT FASHION NOVA, LLC

————

JULIA HU
WILSON SONSINI
GOODRICH & ROSATI, P.C.
953 East Third Street
Los Angeles, CA 90013
julia.hu@wsgr.com

*Counsel for Defendant-Appellant Fashion Nova, LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant Fashion Nova, LLC states that it is a single-member LLC, the sole member of which is Fashion Nova Holding, LLC. Fashion Nova Holding, LLC is a single-member LLC, the sole member of which is Nova Fashion, Inc. No publicly held corporation owns more than 10% of Nova Fashion, Inc.'s stock.

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES ....................................................... iv

INTRODUCTION ................................................................ 1

JURISDICTION ................................................................ 2

ISSUES PRESENTED ........................................................... 2

STATEMENT OF THE CASE ...................................................... 3

SUMMARY OF ARGUMENT ........................................................ 7

STANDARD OF REVIEW ......................................................... 9

ARGUMENT ................................................................... 9

I.   Arbitrability Questions Were Delegated to the Arbitrator ............. 9

     A.   Legal Standards ................................................ 10

     B.   The Arbitration Provision Delegated Questions of
          Arbitrability to the Arbitrator ............................... 10

II.  Under the Terms, Plaintiff's Suit Must Go to Arbitration ............ 19

     A.   Legal Standards ................................................ 19

     B.   The Arbitration Clause Encompasses Plaintiff's Suit ........... 23

     C.   The Provisional Relief Exception Does Not Apply to
          Plaintiff's Suit .............................................. 24

          1.   The Plain Text Does Not Apply to Plaintiff's Suit ...... 25

               a.   "Action" ........................................... 26

               b.   "By a party" ....................................... 32

        c.     "For"....................................................................... 36

        d.     "Temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief" .............. 39

   2.    The District Court's Reading Is Inconsistent with the Syntax of the Arbitration Provision ...................... 42

   3.    The District Court's Reading Ignores the Rest of the Contract and Produces Absurd Results ............... 46

CONCLUSION .................................................................................... 52

STATEMENT OF RELATED CASES ..................................................... 53

iii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acosta v. Brave Quest Corp.*,
    733 F. Supp. 3d 920 (C.D. Cal. 2024)..............................................12

*Alameda Cnty. Flood Control & Water Conservation Dist. v.
    Dep't of Water Res.*,
    213 Cal. App. 4th 1163 (2013)................................................29, 33

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
    935 F.3d 274 (5th Cir. 2019) ........................................... *passim*

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) .......................................................... *passim*

*Atkinson Trading Co. v. Shirley*,
    532 U.S. 645 (2001) ........................................................................48

*Baldwin Tech. Co. v. Printers' Serv., Inc.*,
    2016 WL 354914 (S.D.N.Y. Jan. 27, 2016) ............................ 47, 48

*In re BAM Trading Servs. Inc. Sec. Litig.*,
    733 F. Supp. 3d 854 (N.D. Cal. 2024) ............................................16

*Bastami v. Semiconductor Components Indus., LLC*,
    2017 WL 1354148 (N.D. Cal. Apr. 13, 2017) (Koh, J.)........... *passim*

*Baychar v. Frisby Tech.*,
    2001 WL 856626 (D. Maine July 26, 2001)........................ 36, 40, 51

*Blanton v. Domino's Pizza Franchising LLC*,
    962 F.3d 842 (6th Cir. 2020) ................................................... 17, 19

*Brayman v. KeyPoint Gov't Sols., Inc.*,
    83 F.4th 823 (10th Cir. 2023)................................................... 14, 18

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ......................................... *passim*

iv

*Brown & Root Indus. Servs., LLC v. Brown*,
2024 WL 4595597 (M.D. La. Oct. 28, 2024) .................................. 38

*Brown v. DetailXPerts Franchise Sys., LLC*,
2018 WL 11295029 (N.D. Cal. Sept. 12, 2018) ............................. 51

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ................................................ 23, 30

*Clarus Med., LLC v. Myelotec, Inc.*,
2005 WL 3272139 (D. Minn. Nov. 30, 2005) ................................ 36

*Comedy Club, Inc. v. Improv W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009) ............................................. *passim*

*Commc'ns Workers of Am. v. AT & T Inc.*,
6 F.4th 1344 (D.C. Cir. 2021) ...................................................... 14

*Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*,
748 F.3d 249 (5th Cir. 2014) ................................................. 43, 44

*Cree v. Waterbury*,
78 F.3d 1400 (9th Cir. 1996) ....................................................... 33

*Davis v. Seva Beauty, LLC*,
2017 WL 11921334 (W.D. Wash. Sept. 13, 2017) .................. *passim*

*Diaz v. Macys W. Stores, Inc.*,
101 F.4th 697 (9th Cir. 2024) ........................................................ 9

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) .......................... 33, 34, 35, 46, 50

*DXP Enterprises, Inc. v. Goulds Pumps, Inc.*,
2014 WL 5682465 (S.D. Tex. Nov. 4, 2014) ............................ 45, 46

*E.E.O.C. v. Waffle House, Inc.*,
534 U.S. 279 (2002) ............................................................... 20, 21

*E.M.M.I. Inc. v. Zurich Am. Ins. Co.*,
32 Cal. 4th 465 (2004) ............................................................... 32

*El Pollo Loco, Inc. v. Hashim,*
    316 F.3d 1032 (9th Cir. 2003) .......................................................... 9

*Farr v. Acima Credit LLC,*
    2021 WL 2826709 (N.D. Cal. July 7, 2021) ................. 23, 35, 40, 48

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995) ....................................................................... 20

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana,*
    98 F.4th 1180 (9th Cir. 2024) ......................................................... 9

*Fraser v. Brightstar Franchising, LLC,*
    2016 WL 6442185 (N.D. Ill. Nov. 1, 2016) .................................... 52

*G.G. v. Valve Corp.,*
    799 F. App'x 557 (9th Cir. 2020) ................................................... 12

*Galilea, LLC v. AGCS Marine Ins. Co.,*
    879 F.3d 1052 (9th Cir. 2018) ....................................................... 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    586 U.S. 63 (2019) ................................................................. *passim*

*HFA Specialty Acquisitions LLC v. NexGen Flight Sols., LLC,*
    2024 WL 4828043 (D.D.C. Nov. 19, 2024) ......................... 14, 16, 19

*Info. Sys. Audit & Control Ass'n v. TeleComm. Sys. Inc.,*
    2017 WL 2720433 (N.D. Ill. June 23, 2013) .................................. 49

*Jabbari v. Wells Fargo & Co.,*
    2015 WL 13699809 (N.D. Cal. Sept. 23, 2015) .............................. 11

*Jarecki v. G. D. Searle & Co.,*
    367 U.S. 303 (1961) ....................................................................... 31

*Karpenski v. Am. Gen. Life Cos., LLC,*
    999 F. Supp. 2d 1235 (W.D. Wash. 2014) ..................................... 20

*Kashmiri v. Regents of Univ. of Cal.,*
    156 Cal. App. 4th 809 (2007) ......................................................... 47

*Khraibut v. Chahal*,
   2016 WL 1070662 (N.D. Cal. Mar. 18, 2016)................................16

*Maner v. Dignity Health*,
   9 F.4th 1114 (9th Cir. 2021)......................................................39

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995) ....................................................................46

*Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.*,
   2014 WL 562264 (E.D. Mich. Feb. 13, 2014) ..............................48

*Oceanside 84, Ltd. v. Fid. Fed. Bank*,
   56 Cal. App. 4th 1441 (1997)......................................................21

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) ..............................................16, 17

*Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*,
   816 F. Supp. 213 (S.D.N.Y. 1993) ..........................................35, 50

*Rent-A-Ctr., West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ....................................................................15

*Revitch v. DIRECTV, LLC*,
   977 F.3d 713 (9th Cir. 2020) ......................................................47

*Roldan v. Callahan & Blaine*,
   219 Cal. App. 4th 87 (2013)........................................................12

*S & M Inv. Co. v. Tahoe Reg'l Plan. Agency*,
   911 F.2d 324 (9th Cir. 1990) ......................................................29

*Schnall v. AT & T Wireless Servs., Inc.*,
   259 P.3d 129 (Wash. 2011)........................................................20

*Stations W., LLC v. Pinnacle Bank of Oregon*,
   2007 WL 1219952 (D. Or. Apr. 23, 2007)....................................51

*Stations W., LLC v. Pinnacle Bank of Oregon*,
   338 F. App'x 658 (9th Cir. 2009) ................................................51

vii

*Tabas v. MoviePass, Inc.*,
  401 F. Supp. 3d 928 (N.D. Cal. 2019) ............................................ 27

*Tice v. Amazon.com, Inc.*,
  845 F. App'x 535 (9th Cir. 2021) ................................................. 11

*Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*,
  609 F.3d 975 (9th Cir. 2010) ...................................................... 50

*TravelClick, Inc. v. Open Hosp. Inc.*,
  2004 WL 1687204 (S.D.N.Y. July 27, 2004) ........................... 42, 51

*W. Coast Stationary Eng'rs Welfare Fund v. City of
     Kennewick*,
  694 P.2d 1101 (Wash. App. 1985) ............................................... 12

*Weimin Chen v. Sierra Trading Post, Inc.*,
  2019 WL 3564659 (W.D. Wash. Aug. 6, 2019) .............................. 12

*Woolley v. Embassy Suites, Inc.*,
  227 Cal. App. 3d 1520 (1991) ..................................................... 50

*Yates v. United States*,
  574 U.S. 528 (2015) .................................................................. 40

**STATUTES**

9 U.S.C. § 3 ................................................................................. 49

9 U.S.C. § 16(a)(1)(C) ..................................................................... 2

28 U.S.C. § 1332(d)(2) .................................................................... 2

Cal. Civ. Code § 1638 ............................................................. 21, 47

Cal. Civ. Code § 1641 .................................................................. 21

Cal. Civ. Code § 1644 .................................................................. 26

Cal. Code Civ. Proc. § 1281.8(b) ................................................. 50

viii

## RULES

AAA Commercial Dispute Resolution Procedures R-1............................13

AAA Consumer Arbitration Rules R-14................................... 12, 13, 15

AAA Consumer-Related Supplementary Procedures C-1 ......................13

Fed. R. Civ. P. 54(b)...............................................................................26

## MISCELLANEOUS

*Action*, *Black's Law Dictionary* (11th ed. 2019)....................................27

*Action*, *Black's Law Dictionary* (12th ed. 2024)......................... 26, 27, 28

*Claim*, *Black's Law Dictionary* (11th ed. 2019) .....................................30

*Claim*, *Black's Law Dictionary* (12th ed. 2024) .....................................31

*Litigation*, *Black's Law Dictionary* (6th ed. 1990) ................................29

*Provisional*, *Black's Law Dictionary* (12th ed. 2024) .............................40

*Provisional Injunction*, *Black's Law Dictionary* (12th ed. 2024) .................................................................................40

## INTRODUCTION

When Plaintiff Emily Dembiczak bought jeans online from Fashion Nova, she agreed to a mandatory arbitration provision. The provision required arbitration of "any dispute relating in any way to" Fashion Nova's website, products, or Plaintiff's purchase. Plaintiff's challenge to Fashion Nova's online pricing practices is plainly such a dispute. As is commonplace in consumer complaints, Plaintiff's complaint included a conclusory prayer for injunctive relief in her suit for damages. She did not move for a preliminary injunction or temporary restraining order or otherwise try to obtain injunctive relief.

The district court incorrectly denied Fashion Nova's motion to compel arbitration based solely on Plaintiff's pro forma demand for injunctive relief. Although Fashion Nova's arbitration provision contains a carve-out for "actions by a party for temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief," that limited exception does not encompass the merits of Plaintiff's otherwise plainly arbitrable suit. In allowing the exception to swallow the rule, the district court adopted a reading of the agreement that is inconsistent with its text and syntax, the federal presumption in favor of

1

arbitration, and common sense. To the extent there is any ambiguity in the agreement, it should have been resolved in favor of arbitration. This Court must reverse.

In any case, the district court should never have reached the scope of the arbitration agreement or its provisional relief exception because the agreement delegated those gateway questions to the arbitrator in the first instance. Under well-established precedent, incorporation of the American Arbitration Association ("AAA") Rules—one of which gives the arbitrator jurisdiction to decide the scope of the agreement—constitutes clear and unmistakable evidence of delegation. For that independent reason, this Court should reverse.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332(d)(2). On February 13, 2024, the district court denied Fashion Nova's motion to compel arbitration. (ER-4–20.) Fashion Nova filed a timely notice of appeal on February 23, 2024. (ER-143–144.) This Court has jurisdiction under 9 U.S.C. § 16(a)(1)(C).

## ISSUES PRESENTED

1. Whether the arbitration agreement delegated questions of arbitrability to the arbitrator.

2

2. Whether a carve-out from arbitration for an "action by a party for temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief" applies to the merits of an entire suit for damages with a prayer for injunctive relief in the complaint that is not the primary or predominant relief sought.

## STATEMENT OF THE CASE

Fashion Nova is a fast fashion retail company that sells products online through its website. (ER-123 ¶ 14.) In April 2020, Plaintiff purchased a pair of jeans from Fashion Nova's website. (ER-129 ¶ 37.) Plaintiff was allegedly deceived that the jeans were discounted "from the purported regular price." (ER-122, 123–126, 129 ¶¶ 8–10, 18–24, 37–38.)

Plaintiff does not dispute that, before checking out, she agreed to Fashion Nova's Terms of Service (the "Terms"). The Terms contain a mandatory arbitration provision (the "Arbitration Provision"):

> ***Any dispute relating in any way to your visit to, or use of, the Website, the Products, or any purchase or otherwise related to this Agreement ("Disputes") shall be submitted to confidential arbitration in Los Angeles, California, USA and shall be governed exclusively by the laws of the State of California, excluding its conflict of law provisions.***[1] If a Dispute arises under this Agreement, you agree to contact us at legal@fashionnova.com (email).

---

[1] Hereinafter, the "Arbitration Clause."

3

Before formally submitting a Dispute to arbitration, you and Fashion Nova may choose to informally resolve the Dispute. If any Dispute cannot be resolved informally, you agree that any and all Disputes, other than those filed in small claims court, shall be submitted to final and binding arbitration before a single arbitrator of the American Arbitration Association ("AAA") in a location convenient to you or telephonically. Either you or Fashion Nova may commence the arbitration process by submitting a written demand for arbitration with the AAA, and providing a copy to the other party. ***The arbitration will be conducted in accordance with the provisions of the AAA's Commercial Dispute Resolutions Procedures, Supplementary Procedures for Consumer-Related Disputes, in effect at the time of submission of the demand for arbitration.***[2] Except as may be required by law as determined by the arbitrator, no party or arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties. Fashion Nova will pay all of the filing costs. ***Notwithstanding the foregoing, the following shall not be subject to arbitration and may be adjudicated only in the state and federal courts of California***: (i) any dispute, controversy, or claim relating to or contesting the validity of Fashion Nova's intellectual property rights and proprietary rights, including without limitation, patents, trademarks, service marks, copyrights, or trade secrets; (ii) ***an action by a party for temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief***[3]; (iii) any legal action by Fashion Nova against a non-consumer; or (iv) interactions with governmental and regulatory authorities. You expressly agree to refrain from bringing or joining any claims in any representative or class-wide capacity, including but not limited to bringing or joining any claims in any class action or any class-wide arbitration.

---

[2] Hereinafter, the "Delegation Clause."

[3] Hereinafter, the "Provisional Relief Exception."

(ER-91 (emphasis added).)

Plaintiff filed suit in the Western District of Washington challenging Fashion Nova's online pricing practices. Plaintiff brings claims for violation of a Washington consumer protection statute, breach of warranty, unjust enrichment, and misrepresentation. (ER-131–137 ¶¶ 52–112.) Plaintiff seeks damages, restitution, disgorgement, and "[a]n injunction prohibiting Defendant's deceptive conduct." (ER-137 ¶ 113.) The Complaint is devoid of any allegations concerning injunctive relief other than: (1) a conclusory allegation that "without an injunction, [Plaintiff] cannot trust that Defendant will comply with the consumer protection statutes" (ER-129 ¶ 39); (2) a brief reference to the availability of injunctive relief under the Washington Consumer Protection Act (ER-132 ¶ 56); and (3) a boilerplate prayer for injunctive relief at the end of the Complaint (ER-137 ¶ 113). Plaintiff seeks to represent a putative class of similarly deceived consumers in Washington. (ER-130 ¶ 45.) Plaintiff did not move for a TRO or preliminary injunction or otherwise seek injunctive relief. (ER-165–170.)

Fashion Nova moved to compel arbitration. Fashion Nova argued that Plaintiff had formed a valid agreement to arbitrate by assenting to

the Terms, that Plaintiff's claims fell within the scope of the Arbitration Provision, and that the Provisional Relief Exception did not apply to Plaintiff's case. (ER-72–83.) Plaintiff opposed. Plaintiff did not dispute that she had assented to the Terms or that the Arbitration Clause otherwise encompassed her claims. (ER-51.) Plaintiff's sole argument was that her case fell within the Provisional Relief Exception. (ER-51–59.) Fashion Nova filed a reply, arguing that Plaintiff's run-of-the-mill case did not fall within the Provisional Relief Exception and that, in any event, the question of arbitrability was delegated to the arbitrator by the agreement's incorporation of the AAA rules. (ER-37–43.) The district court permitted Plaintiff to file a sur-reply on the delegation question. (ER-167 (Dkt. 35).) Plaintiff's sur-reply argued that the Arbitration Provision referenced an old version of the AAA rules and that the Provisional Relief Exception removed Plaintiff's case from the agreement's incorporation of the AAA rules. (ER-23–27.)

The district court denied the motion to compel arbitration. (ER-20.) Given the lack of dispute, the court found a valid agreement to arbitrate. (ER-8–10.) The court held that there was not clear and unmistakable evidence of delegation of arbitrability questions based on the outdated

6

nomenclature used for the AAA rules in the Delegation Clause. (ER-10–12.) Further, the court read the Provisional Relief Exception to apply to the Delegation Clause itself. (ER-12–13.) Turning to the arbitrability question, the court held that the Provisional Relief Exception was unambiguous and encompassed Plaintiff's entire suit for damages with an incidental request for injunctive relief. (ER-13–20.) The district court concluded the word "action" must refer to an entire lawsuit on the merits, while ignoring the rest of the words in the Provisional Relief Exception as well as the other provisions in the contract. (ER-17–19.)

Fashion Nova timely appealed. (ER-143–144.)

## SUMMARY OF ARGUMENT

The district court should never have reached the arbitrability question because the Terms clearly and unmistakably delegate questions of arbitrability to the arbitrator. (Section I.) The Terms provide that the American Arbitration Association rules govern, and those rules give the arbitrator jurisdiction to decide the scope of the arbitration agreement. Under well-established precedent, that is a clear and unmistakable delegation, and the district court should have sent Plaintiff's case to arbitration for the arbitrator to decide arbitrability in the first instance.

7

If the Court reaches the arbitrability question, the Court must send Plaintiff's case to arbitration. (Section II.) Plaintiff's challenge to Fashion Nova's online pricing practices is precisely the type of "dispute relating in any way to" Fashion Nova's website, products, and Plaintiff's purchase that the Terms subject to arbitration. (Section II.B.) Plaintiff cannot escape arbitration simply by tacking on a pro forma prayer for injunctive relief in her Complaint. (Section II.C.) Under the federal presumption in favor of arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted). The Provisional Relief Exception is not that. The carve-out from arbitration for "actions by a party for temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief" permits only limited requests in court for injunctive relief, not resolution of the merits of an entire case. The district court's reading was inconsistent with the agreement's plain text (Section II.C.1) and syntax (Section II.C.2) and failed to give meaning to all the contract's provisions without producing absurd results (Section II.C.3). To the extent there is

8

any ambiguity in the Provisional Relief Exception, that should have been resolved in favor of arbitration, not against it. This Court should reverse.

## STANDARD OF REVIEW

This Court "review[s] a district court's decision to grant or deny a motion to compel arbitration de novo." *Diaz v. Macys W. Stores, Inc.*, 101 F.4th 697, 700 (9th Cir. 2024). "The interpretation and meaning of contract provisions are questions of law and are also reviewed de novo." *Id.* (cleaned up).

## ARGUMENT

## I. Arbitrability Questions Were Delegated to the Arbitrator

The district court should not even have reached the question of whether Plaintiff's case fell within the Provisional Relief Exception because it was delegated to the arbitrator.[4]

---

[4] Although Fashion Nova raised the delegation argument for the first time in reply, Plaintiff filed a sur-reply on the delegation issue. (ER-167 (Dkt. 35); ER-21–28.) "A district court does not abuse its discretion in considering new arguments or evidence if the opposing party had an opportunity to respond." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188 (9th Cir. 2024); *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040–41 (9th Cir. 2003) (district court properly considered an argument raised for the first time in reply brief because the adverse party had an opportunity to rebut the argument).

### A.      Legal Standards

The "gateway issue[]" of "whether the agreement covers the dispute" "can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide otherwise.'" *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *AT & T Techs.*, 475 U.S. at 649) (emphasis omitted).   "When the parties' contract delegates the threshold arbitrability question to an arbitrator," the "court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).   "[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130.

### B.      The Arbitration Provision Delegated Questions of Arbitrability to the Arbitrator

Here, the Arbitration Provision delegated gateway questions of arbitrability to the arbitrator.  The Arbitration Clause requires arbitration of "any dispute *relating in any way* to [a user's] visit to, or use of, [Fashion Nova's] Website, [Fashion Nova's] Products, or any purchase *or otherwise related to this Agreement*."  (ER-91.)  A dispute about the meaning of the Provisional Relief Exception in the agreement is such a dispute.  (*Id.*)  "Relating in any way to" and "related to" are broadening terms.   For

10

example, this Court has read an arbitration clause that encompassed "any *dispute* or claim *relating in any way* to" the product and "[a]ny dispute or claim arising from *or relating to* th[e] Agreement or [product]" to leave it to "the arbitrator to decide whether [the plaintiff's] claim is beyond the scope of any arbitration." *Tice v. Amazon.com, Inc.*, 845 F. App'x 535, 537 (9th Cir. 2021) (citation omitted); *see also Jabbari v. Wells Fargo & Co.*, 2015 WL 13699809, at *1 (N.D. Cal. Sept. 23, 2015) ("any unresolved disagreement, . . . including any dispute relating in any way" to services is sufficient delegation (cleaned up)).

The Arbitration Provision further provides that "[a]ny and all" such disputes must "be submitted to final and binding arbitration before a single arbitrator of the American Arbitration Association ('AAA')." (ER-91.) And any such "arbitration will be conducted in accordance with the provisions of the AAA's Commercial Dispute Resolutions Procedures, Supplementary Procedures for Consumer-Related Disputes, in effect at the time of submission of the demand for arbitration." (*Id.*)

The AAA rules are clear: "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the

11

arbitrability of any claim or counterclaim." AAA Consumer Arbitration Rules R-14(a) (effective Sept. 1, 2014), https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf. That language constitutes an unmistakable delegation of questions of arbitrability under well-established precedent. *See Brennan*, 796 F.3d at 1130; *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1062 (9th Cir. 2018).[5]

---

[5] Although *Brennan* declined to decide whether incorporation of AAA rules could constitute clear and unmistakable evidence of delegation for unsophisticated parties, *see* 796 F.3d at 1130, this Court has subsequently applied the *Brennan* rule to unsophisticated parties, such as teenagers, *see G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020) ("the teenagers clearly and unmistakably agreed to arbitrate questions of arbitrability because the arbitration agreement incorporates AAA rules"). The Court held that "[t]he parties' degree of sophistication does not change" the analysis "because, under Washington law, '[c]ourts presume that parties to an agreement have read all parts of the entire contract and intend what is stated in its objective terms.'" *Ibid.* (quoting *W. Coast Stationary Eng'rs Welfare Fund v. City of Kennewick*, 694 P.2d 1101, 1104 (Wash. App. 1985)). California law is the same: "courts must also presume parties understood the agreements they sign, and that the parties intended whatever the agreement objectively provides, whether or not they subjectively did." *Roldan v. Callahan & Blaine*, 219 Cal. App. 4th 87, 93 (2013); *see also Acosta v. Brave Quest Corp.*, 733 F. Supp. 3d 920, 927 (C.D. Cal. 2024) (extending *Brennan* rule to unsophisticated parties under California law (citing *Valve Corp.*, 799 F. App'x at 558)). Thus, the incorporation of the AAA rules here was clear and unmistakable evidence of delegation even though Plaintiff is a consumer. "[T]he vast majority of the circuits," *Brennan*, 796 F.3d at 1130–31 (collecting cases), and "the greater weight of authority since *Brennan*" in this Circuit, *Weimin Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659, at *4 (W.D. Wash. Aug. 6, 2019) (collecting cases), are in accord.

The district court incorrectly found that delegation was not sufficiently clear solely because of the outdated AAA nomenclature used in the Delegation Clause: "the provisions of the AAA's Commercial Dispute Resolutions Procedures, Supplementary Procedures for Consumer-Related Disputes, in effect at the time of submission of the demand for arbitration."[6] (ER-91, 11–12.) But the inquiry is not whether the reference to the AAA rules in the contract is "clear and unmistakable."

Indeed, *Brennan* found a provision that provided that arbitration would be conducted "in accordance with the Rules of the American Arbitration Association" *generally* to be clear evidence of delegation even

---

[6] The AAA used to have two sets of rules for consumer/business disputes: the "Commercial Dispute Resolution Procedures," which were supplemented by the "Consumer-Related Disputes Supplementary Procedures." *See* Consumer-Related Disputes Supplementary Procedures C-1 (effective Sept. 15, 2005), https://www.adr.org/sites/default/files/Consumer%20Related%20Disputes%20Supplementary%20Procedures%20Sep%2015%2C2005.pdf (providing that "[t]he Commercial Dispute Resolution Procedures *and* these Supplementary Procedures for Consumer-Related Disputes shall apply" to consumer/business disputes). Now, the AAA has one set of rules for consumer/business disputes: the "Consumer Arbitration Rules." *See* Consumer Arbitration Rules R-1(a)(2) (effective Sept. 1, 2014), https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf (the "Consumer Arbitration Rules" shall apply if the parties "have specified that the *Supplementary Procedures for Consumer-Related Disputes* shall apply, which have been amended and renamed the *Consumer Arbitration Rules*").

13

though the provision did not spell out *which* set of AAA rules containing the delegation clause applied to the dispute at issue. 796 F.3d at 1128, 1130 (noting "one" of the AAA rules provided the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the … validity of the arbitration agreement"). Other "courts have found that the incorporation of an arbitration organization's rules *generally*, instead of a category of *specific* rules, shows clear and unmistakable intent to arbitrate gateway issues of arbitrability." *HFA Specialty Acquisitions LLC v. NexGen Flight Sols., LLC*, 2024 WL 4828043, at \*9 (D.D.C. Nov. 19, 2024) (citing cases) (emphases added); *see, e.g.*, *Commc'ns Workers of Am. v. AT & T Inc.*, 6 F.4th 1344, 1346 (D.C. Cir. 2021) ("arbitration … in accordance with[] the rules of the American Arbitration Association (AAA)" generally was a clear delegation); *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 835 (10th Cir. 2023) ("arbitration in accordance with the arbitration rules of the American Arbitration Association (AAA)" generally was a clear delegation).

If invocation of the AAA rules *generally* is sufficient evidence of delegation, it follows that invocation of the version of specific rules "in effect at the time of submission of the demand for arbitration" is also sufficient.

14

(ER-91.) In other words, the FAA does not require that the arbitration agreement spell out with unmistakable clarity *which* AAA rules apply.

The correct inquiry is whether *the language constituting the delegation* "clearly and unmistakably" gives the arbitrator authority to decide the scope of the arbitration agreement. *See Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 80 (2010); *Brennan*, 796 F.3d at 1130 (analyzing language in the AAA rules rather than the contract). As to that question, *all* versions of the relevant AAA rules are clear: "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[7]

---

[7] AAA Consumer Arbitration Rules R-14(a) (current version effective Sept. 1, 2014), https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf. The applicable archived rules (available at: https://www.adr.org/ArchiveRules) contain the same delegation language. *See* AAA Consumer Arbitration Rules R-14 (archived version dated Oct. 21, 2011), https://www.adr.org/sites/default/files/Consumer%20Rules.pdf; AAA Commercial Dispute Resolutions Procedures – Amended R-8(a) (archived version dated Jan. 1, 2003), https://www.adr.org/sites/default/files/Commercial_Dispute_Resolution_Procedures-Amended.pdf; AAA Commercial Dispute Resolutions Procedures R-8(a) (archived version dated July 1, 2002), https://www.adr.org/sites/default/files/Commercial_Dispute_Resolution_Procedures.pdf; AAA Commercial Dispute Resolutions Procedures R-8(a) (archived version Sept. 1, 2000), https://www.adr.org/sites/default/files/Commercial_Dispute_Resolution_Procedures.pdf (same).

Since "there is not a significant distinction between how these sets of rules treat questions of arbitrability," "it is immaterial *which version* of the [AAA] rules is applied." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1073 (9th Cir. 2013) (emphasis added); *see also In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 864 (N.D. Cal. 2024) (delegation sufficient because "regardless of which AAA rules apply, the arbitrator decides arbitrability"). That the Delegation Clause used an old name for AAA rules—the prior and current versions of which include the relevant delegation language—has no bearing on whether the parties delegated questions of arbitrability. *See Khraibut v. Chahal*, 2016 WL 1070662, at *5 (N.D. Cal. Mar. 18, 2016) (regardless of which AAA rules apply, "the same [delegation] language applies and does not create enough ambiguity or confusion to defeat a 'clear and unmistakable' showing"); *HFA Specialty Acquisitions*, 2024 WL 4828043, at *9 (sufficient to "indicate[] that [an] organization's formal set of rules governing arbitrations applied, *even if the precise title of the rules differs*" (emphasis added)). The district court thus erred in declining to compel arbitration on that basis. (ER-11–12.)

16

In addition, the district court put the cart before the horse in concluding that the Provisional Relief Exception carved out Plaintiff's case *from the Delegation Clause.* (ER-12–13.) The district court "conflate[d] the *scope* of the arbitration clause, i.e., which claims fall within the carve-out provision, with the question of *who* decides arbitrability." *Oracle*, 724 F.3d at 1076 (holding that whether the suit fell within a similarly structured carve-out was delegated to the arbitrator).

Here, the Arbitration Clause plainly subjects "any dispute … related to th[e] Agreement" to arbitration. (ER-91.) Whether Plaintiff's suit is arbitrable or qualifies as "an action by a party for" provisional relief that is exempt from arbitration *is* a "dispute … related to th[e] Agreement." (*Id.*) Under the Terms, such a dispute must be submitted to arbitration to be conducted in accordance with the AAA rules, one of which gives the arbitrator jurisdiction to decide the scope of the agreement (*id.*). *See Brennan*, 796 F.3d at 1130.

In other words, "[t]he decision that" something falls within an exception "constitutes an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator by incorporating the [AAA] rules." *Oracle*, 724 F.3d at 1076; *see also Blanton v.*

17

*Domino's Pizza Franchising LLC*, 962 F.3d 842, 848 (6th Cir. 2020) ("[T]he carveout goes to the *scope of the agreement*—a question that the agreement otherwise delegates to the arbitrator—not the *scope of the arbitrator's authority* to decide questions of 'arbitrability.'"); *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 834 (10th Cir. 2023) ("The Exception provision is fully consistent with granting the arbitrator the authority to decide whether the Exception applies."). The district court's contrary reading of the Delegation Clause "directly contradict[s] the fact that [the parties] 'clearly and unmistakably' delegated the [arbitrability] determination to the arbitrator in the Delegation [Clause] located in that very same Arbitration [Provision]." *Brennan*, 796 F.3d at 1131.

The district court cited *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019), but that case dealt with a uniquely structured injunctive relief exception. As detailed *infra* pp. 42–44, the syntax of the provision in *Archer* was fundamentally different: the injunctive relief exception was set off in a parenthetical in the same sentence that incorporated the AAA rules. Numerous courts have declined to apply *Archer*'s reasoning to the distinct structure of the Arbitration Provision here, where the incorporation of the AAA rules is its own sentence

18

and the carve-out comes later in its own sentence with a "notwithstanding" clause. *See, e.g.*, *HFA Specialty Acquisitions*, 2024 WL 4828043, at *8 ("By contrast to the single line of text the Fifth Circuit analyzed, the relevant portion of the arbitration clause of the Agreement at issue here has four separate sentences." (citing *Archer*, 935 F.3d at 277)); *Blanton*, 962 F.3d at 847 (distinguishing "when an arbitration agreement carves out certain claims from the very provision that incorporates the AAA Rules" (citing *Archer*, 935 F.3d at 280–82)).

Because the agreement delegates gateway questions of arbitrability, the arbitrator, not the district court, should have decided the scope of the agreement in the first instance. This Court must reverse.

## II. Under the Terms, Plaintiff's Suit Must Go to Arbitration

If the Court reaches the question, Plaintiff's suit is arbitrable.

### A. Legal Standards

"It is well established 'that where the contract contains an arbitration clause, there is a presumption of arbitrability.'" *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT & T Techs.*, 475 U.S. at 650). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that

19

covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs.*, 475 U.S. at 650 (citation omitted). That means "ambiguities in the language of the agreement should be resolved in favor of arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). With respect to exclusions, "in the absence of any *express* provision excluding a particular grievance from arbitration … only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs.*, 475 U.S. at 650 (citation omitted).

"It is also well established that '[w]hen deciding whether the parties agreed to arbitrate a certain matter … courts generally … should apply ordinary state-law principles that govern the formation of contracts'"— in this case, California law. *Comedy Club*, 553 F.3d at 1285 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).[8] "Under California contract law, 'if the language [of a contract] is clear and

---

[8] The Terms contain a choice-of-law clause designating that California law shall apply. (ER-91.) Courts in the forum state—Washington—enforce an agreement's choice of governing law absent a conflict. *See Karpenski v. Am. Gen. Life Cos., LLC,* 999 F. Supp. 2d 1235, 1242 (W.D. Wash. 2014); *Schnall v. AT & T Wireless Servs., Inc.*, 259 P.3d 129, 131–32 (Wash. 2011). Plaintiff has not identified any conflict between California and Washington law, and the district court found no daylight between California and Washington law on the relevant contract interpretation questions. (ER-14.)

explicit, and does not involve an absurdity' the language must govern the contract's interpretation." *Id.* (quoting Cal. Civ. Code § 1638). Moreover, "a contract must be interpreted as a whole, 'so as to give effect to every part, . . . each clause helping to interpret the other.'" *Id.* (quoting Cal. Civ. Code § 1641). However, "[i]f a contract is capable of two different reasonable interpretations, the contract is ambiguous." *Oceanside 84, Ltd. v. Fid. Fed. Bank*, 56 Cal. App. 4th 1441, 1448 (1997).

This Court's decision in *Comedy Club* demonstrates how the federal presumption in favor of arbitrability and state contract law must interact. If the text of the arbitration provision "is clear and explicit, and does not involve an absurdity," that interpretation governs. *See* Cal. Civ. Code § 1638. If, however, there is *any* "rational interpretation of the agreement" that points to arbitration, this Court must resolve the ambiguity in favor of arbitration. *Comedy Club*, 553 F.3d at 1285; *see also Waffle House*, 534 U.S. at 294. *Comedy Club* found that a similar injunctive relief exception was ambiguous and, given the federal presumption in favor of arbitrability, found the plaintiff's entire suit for damages and injunctive relief to be arbitrable. 553 F.3d at 1285; *see infra* p. 34.

21

Here, as detailed *infra* Section II.C.1, the plain text of the Provisional Relief Exception does not encompass Plaintiff's entire suit. The Provisional Relief Exception permits only limited requests for injunctive or provisional relief to go to court.

Even if the Court concludes that multiple interpretations are reasonable, however, that requires reversal. *See Comedy Club*, 553 F.3d at 1286 ("[B]ecause the arbitration agreement is ambiguous, it should be interpreted as granting arbitration coverage[.]"). As detailed *infra* pp. 35–37, 41, numerous federal courts have interpreted similar language differently than the district court did here, counseling for, at a minimum, a finding of ambiguity. *See, e.g.*, *Bastami v. Semiconductor Components Indus., LLC*, 2017 WL 1354148, at *7–8 (N.D. Cal. Apr. 13, 2017) (Koh, J.) (holding that the contractual phrase "actions *for* injunctive or other equitable relief" "does not expand the exception to '*any* actions in which injunctive or other equitable relief is sought'"); *Davis v. Seva Beauty, LLC*, 2017 WL 11921334, at *3 (W.D. Wash. Sept. 13, 2017) (interpreting phrase "any action for declaratory or equitable relief, including, without limitation, seeking preliminary or permanent injunctive relief" to mean that "a party may seek a preliminary injunction pending resolution of the

22

merits by arbitration, or a permanent injunction or declaratory relief after prevailing in arbitration" but cannot "circumvent the arbitration clause by simply seeking equitable remedies for claims that are squarely within the scope of matters to be arbitrated"). That at least one state court has compelled arbitration based on the exact same Arbitration Provision at issue here also suggests ambiguity. (*See* ER-115.)

### B. The Arbitration Clause Encompasses Plaintiff's Suit

The Terms require arbitration of "any dispute relating in any way to [a user's] visit to, or use of, the [Fashion Nova] Website, [Fashion Nova's] Products, or any purchase or otherwise related to this Agreement." (ER-91.) Given its broadening language—"*any* dispute *relating in any way*"—the Arbitration Clause was clearly intended to encompass all possible consumer disputes. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (holding that an arbitration clause is "broad and far reaching" where it applies to "[a]ny dispute, controversy or claim arising out of or relating to … this Agreement"). Where an arbitration agreement contains such a "sweeping arbitration provision," any exceptions should be construed narrowly. *Farr v. Acima Credit LLC*, 2021 WL 2826709, at *4 (N.D. Cal. July 7, 2021); *see also AT & T*

*Techs.*, 475 U.S. at 650 ("[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." (citation omitted)).

Plaintiff does not contest that her case is a dispute subject to the Arbitration Clause. (ER-51.) Nor could she. Her challenge to Fashion Nova's online pricing practices during a purchase that she made on Fashion Nova's website is exactly the type of dispute that the agreement contemplated must go to arbitration. (ER-91.)

## C. The Provisional Relief Exception Does Not Apply to Plaintiff's Suit

Plaintiff cannot transform a plainly arbitrable dispute into a non-arbitrable one merely by pleading a conclusory demand for injunctive relief. After subjecting all consumer disputes to arbitration, the Terms spell out a set of four limited circumstances that "shall not be subject to arbitration and may be adjudicated only in the state and federal courts of California." (ER-91.) One of these is "an action by a party for temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief." (*Id.*) As detailed below, the plain text and syntax make it clear that the Provisional Relief Exception does not apply to Plaintiff's suit. It could refer to limited requests for injunctive relief by the parties in aid of arbitration, such as a temporary

24

injunction to preserve the status quo or a permanent injunction after an arbitration award. *See Comedy Club*, 553 F.3d at 1285–86. It could also permit judicial resolution of only Plaintiff's request for injunctive relief. *See Bastami*, 2017 WL 1354148, at \*7–8 (holding that contractual phrase "actions for injunctive or other equitable relief" "may apply only where either (1) injunctive or equitable relief is the sole remedy sought by the plaintiff, or (2) injunctive or equitable relief is the primary or predominant remedy sought by the plaintiff"). To read the exception to swallow the rule, as the district court did, does not give effect to the arbitration agreement as a whole and produces absurd results. And to the extent there is ambiguity, it must be resolved in favor of arbitration. *See AT & T Techs.*, 475 U.S. at 650.

### 1. The Plain Text Does Not Apply to Plaintiff's Suit

Taken together, the plain text—"an action by a party for temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief" (ER-91)—does not encompass the merits of Plaintiff's entire suit for damages with a conclusory request for injunctive relief.

### a. "Action"

The district court placed outsized emphasis on the word "action" while ignoring the rest of the words. (ER-17.) The court found that "[t]he plain meaning of 'action' is an entire lawsuit or legal proceeding" and reasoned that Plaintiff's entire lawsuit for damages with a conclusory prayer for injunctive relief must be such an action. (*Id.*)

The court read "action" as if the parties had intended to incorporate the Federal Rules of Civil Procedure. (ER-17 (quoting Fed. R. Civ. P. 54(b)).) That was too narrow a reading. There was no evidence that the parties intended such a specialized meaning. *See* Cal. Civ. Code § 1644 ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a specialized meaning is given to them by usage, in which case the latter must be followed.").

"Action" has numerous meanings. The first definition in Black's Law is "the exercise of a claim before a judge." *Action*, *Black's Law Dictionary* (12th ed. 2024). Thus, a limited request for injunctive relief in court—separate from the merits of the underlying suit in arbitration—

could be characterized as an "action." An "action" does not have to be an entire lawsuit on the merits.

In reaching that erroneous conclusion, the district court relied on the fourth definition of "action" in Black's Law: "[a] civil or criminal judicial proceeding." (ER-17 (quoting *Action*, *Black's Law Dictionary* (11th ed. 2019).) But the comments to that definition explain that it encompasses both "ordinary proceeding[s]" and "*special* proceedings." *Action*, *Black's Law Dictionary* (12th ed. 2024) (emphasis added). Thus, a special proceeding to obtain provisional injunctive relief is an "action" just as much as a full lawsuit on the merits.

The district court was incorrect in concluding that "action" had only one reasonable reading. (ER-16.) Courts have interpreted similar injunctive relief exceptions containing the same word "action" to permit only judicial resolution of limited requests for provisional relief, not to displace arbitration of the underlying dispute. *See, e.g.*, *Davis*, 2017 WL 11921334, at *3 (interpreting exception from arbitration for "any *action* for declaratory or equitable relief" to allow the parties to seek only provisional relief "in aid of arbitration" (emphasis added)); *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 938 (N.D. Cal. 2019) (interpreting

27

exception from arbitration for "any legal suit, *action* or proceeding" "[f]or purposes of seeking injunctive or equitable relief" to only "*supplement* what is available in the arbitration" (emphases added)).

Even if "action" referred to an entire lawsuit, it does not follow that Plaintiff's suit seeking damages with an incidental request for injunctive relief is an "action by a party for temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief." (ER-91.) The Black's Law entry for "action" includes definitions for "action in equity" and "action at law." An "action in equity" is "[a]n action that seeks equitable relief, such as an injunction or specific performance, *as opposed to damages*." *Action*, *Black's Law Dictionary* (12th ed. 2024) (emphasis added). In other words, an "action in equity" *only* seeks injunctive relief. By contrast, an "action at law" is a "civil lawsuit stating a legal claim and seeking *only* a legal remedy." *Id.* (emphasis added). These traditional definitions confirm that even if "action" means an entire lawsuit, an "action by a party for temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief" does not apply to Plaintiff's suit for damages with an incidental prayer for injunctive relief. *See Bastami*, 2017 WL 1354148, at

*7–8 (holding that phrase "actions for injunctive or other equitable relief" "may apply only where either (1) injunctive or equitable relief is the sole remedy sought by the plaintiff, or (2) injunctive or equitable relief is the primary or predominant remedy sought by the plaintiff").

Moreover, "action" must be read in light of the rest of the Arbitration Provision. *See Alameda Cnty. Flood Control & Water Conservation Dist. v. Dep't of Water Res.*, 213 Cal. App. 4th 1163, 1186 (2013) (use of a "different word or phrase" in a contract denotes different meanings). For example, the contract provides that "any *legal* action by Fashion Nova against a non-consumer" is not arbitrable. (ER-91 (emphasis added).) "*Legal* action" more plausibly refers to an entire lawsuit, including the merits, being decided in court. *See S & M Inv. Co. v. Tahoe Reg'l Plan. Agency*, 911 F.2d 324, 327 (9th Cir. 1990).[9] By contrast, the different phrasing using the word "action" in the Provisional Relief Exception denotes a narrower request for provisional relief separate from the merits of the entire suit.

---

[9] This Court noted that Black's Law Dictionary "actually use[d] the term 'legal action' in defining 'litigation': 'A lawsuit. *Legal action*, including all proceedings therein. Contest in a court of law for the purpose of enforcing a right or seeking a remedy.'" *S & M Inv.*, 911 F.2d at 327 (quoting *Litigation, Black's Law Dictionary* (6th ed. 1990)).

The Arbitration Provision also requires "any *dispute, controversy, or claim* relating to or contesting the validity of Fashion Nova's intellectual property rights and proprietary rights" to be litigated in court. (ER-91 (emphasis added).) The use of three general terms—"dispute, controversy, or claim"—suggests broadly that all disagreements over that subject matter must be raised in court. *See generally Chiron*, 207 F.3d at 1131 (noting that the language "[a]ny dispute, controversy or claim" is "broad and far reaching"). By contrast, the use of the single word "action" in the Provisional Relief Exception does not convey the same expansive sense that "any actions in which injunctive or other equitable relief is sought" can be brought in court. *Bastami*, 2017 WL 1354148, at *8 (holding that the language "*actions* for injunctive and other equitable relief" "does not expand the exception to 'any actions in which injunctive or other equitable relief is sought'" (emphasis added)).

The district court incorrectly reasoned that the word "claim" must mean a formal legal claim within a complaint and drew an artificial distinction between "claim" and "action." (ER-17 (citing *Claim, Black's Law Dictionary* (11th ed. 2019) ("An interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment

30

of a right or thing").) The district court's narrow reading of "claim" ignored the other two neighboring nouns: "dispute" and "controversy" (ER-91). *See Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961) (explaining the elementary "maxim *noscitur a sociis*, that a word is known by the company it keeps"). The broadness of its neighboring nouns suggests that "claim" in the intellectual property exception has a more general meaning than the district court's reading. *See, e.g., Claim, Black's Law Dictionary* (12th ed. 2024) (defining "claim" as "[a] statement that something yet to be proved is true"). Thus, the use of the word "claim" in a different exception does not imply that "action" in the Provisional Relief Exception must conversely refer to an entire lawsuit on the merits.

Finally, the Arbitration Provision's carve-out for "*interactions* with governmental and regulatory authorities" is also different in kind. (ER-91 (emphasis added).) "Interactions" is more general than "action"; it encompasses any "situation where two or more people or things communicate with each other or react to each another." *Interaction, Cambridge English Dictionary*, https://dictionary.cambridge.org/dictionary/english/interaction. Moreover, that "interactions" is plural suggests that it applies to a wide category of circumstances. By contrast, "*an* action" in

31

the Provisional Relief Exception conveys that it applies to a specific type of action—one only for injunctive or provisional relief.

Thus, "an action" in the Provisional Relief Exception can reasonably be read to refer to a request in court by a party to the arbitration for provisional relief in aid of arbitration or other request only for injunctive relief. It does not unambiguously mean a full lawsuit on the merits that includes an incidental request for injunctive relief.

### b. "By a party"

The district court ignored that "action" was modified by the phrase "*by a party*." (ER-91 (emphasis added).) Read in context, "party" means "party to the arbitration."

The other instance of "party" in the Arbitration Provision is that "no *party* or arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both *parties*." (ER-91 (emphasis added).) "Party" there clearly means a party *to the arbitration* since it contemplates that the parties are already in arbitration, and "the same word used in an instrument is generally given the same meaning unless the [contract] indicates otherwise." *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 475 (2004).

32

Moreover, reading "a party" to mean "a party to the arbitration" gives independent meaning to that term. *See Cree v. Waterbury*, 78 F.3d 1400, 1405 (9th Cir. 1996) ("a court must give effect to every word or term employed by the parties and reject none as meaningless or surplusage"). By contrast, the district court read the words "by a party" out of the Provisional Relief Exception entirely: if the exception were intended to allow entire cases in which injunctive relief is sought to go to court, it would not have needed to specify that any such action must be "by a party." That the other carve-outs from the Arbitration Provision do *not* include the "by a party" phrasing confirms that its conspicuous use in the Provisional Relief Exception contemplates only actions by parties *to an existing arbitration*. *See Alameda Cnty. Flood Control*, 213 Cal. App. 4th at 1186 (use of a "different word or phrase" denotes a different meaning).

In *Dohrmann v. Intuit, Inc.*, this Court found a similar injunctive relief exception—"*any party to the arbitration* may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction"—to permit only requests for injunctive relief in aid of arbitration, not judicial resolution of the merits of the entire suit. 823 F. App'x 482, 484 (9th Cir. 2020) (emphasis added). This Court noted that

33

the "any party to the arbitration" language "suggests that arbitration still applies to all disputes, but that *in addition*, the parties are 'entitled to pursue equitable remedies' before courts." *Id.* (quoting *Comedy Club*, 553 F.3d at 1285). Such language "only permits the district court to issue equitable relief in aid of arbitration, *not determine the merits of an arbitrable dispute*." *Id.* (emphasis added) (sending plaintiff's entire suit for restitution and injunctive relief to arbitration).

*Comedy Club*, on which *Dohrmann* relied, held that similar language—"the parties, in addition to arbitration, shall be entitled to pursue equitable remedies"—"was intended to apply only to claims designed to maintain the status quo between the parties." *Comedy Club*, 553 F.3d at 1285. The "natural reading" was that "the arbitrator could decide both equitable and legal claims and that the provision for court jurisdiction on equitable matters was *ancillary* to the arbitration." *Id.* (emphasis added). So too here—the natural reading of "an action *by a party*" is that the parties *to the arbitration* may go to the court for provisional relief ancillary to the arbitration. *Id.*; *Dohrmann*, 823 F. App'x at 484.

The court incorrectly brushed off *Dohrmann* and *Comedy Club* based on the "permissive and additive phrasing" (i.e., the parties "may"

seek injunctive relief) in the arbitration provisions at issue as compared to the "prohibitive" phrasing in the Provisional Relief Exception (i.e., an action for provisional relief "shall not" go to arbitration). (ER-19.) However, *Dohrmann* and *Comedy Club*'s reasoning was not premised on the permissiveness of the language, and the district court ignored the dispositive similarities between the language in *Dohrmann* and *Comedy Club* and the Provisional Relief Exception. *See supra* pp. 33–34.

The district court's approach was also inconsistent with the weight of authority. In line with this Court's logic in *Dohrmann* and *Comedy Club*, numerous courts have interpreted injunctive relief exceptions containing the word "party" to encompass only limited requests for injunctive relief in addition to arbitration. For example, *Farr* held that an exception with the language "[b]oth *parties* may seek remedies which don't claim money damages … includ[ing] pre-judgment seizure, injunctions, or equitable relief" "does not exempt all equitable claims but 'was intended to apply only to claims designed to maintain the status quo between the parties.'" 2021 WL 2826709, at *4, *6 (quoting *Comedy Club*, 553 F.3d at 1285). Other examples abound. *See, e.g.*, *Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.*, 816 F. Supp. 213, 215 (S.D.N.Y.

1993) (same reading with language: "The *parties* may seek from the Arbitration Tribunal and from any judicial courts of proper jurisdiction equitable relief by way of temporary and permanent injunctions"); *Clarus Med., LLC v. Myelotec, Inc.*, 2005 WL 3272139, at *3 (D. Minn. Nov. 30, 2005) (same reading with language: "Notwithstanding any provision of this section to the contrary, *each party* shall be entitled to seek injunctive and other equitable relief in any court or forum of competent jurisdiction" (emphasis added)); *Baychar v. Frisby Tech.*, 2001 WL 856626 at *6–7 (D. Maine July 26, 2001) (same reading with language: "*each Party* shall have the right to seek and obtain injunctive relief … in addition to all of the rights and remedies available at law or in equity" (emphasis added)).

### c. "For"

The district court also ignored the word "for" in "action by a party *for*" provisional relief. (ER-91.)

The preposition "for" means "having the purpose of." *For, Cambridge English Dictionary*, [https://dictionary.cambridge.org/dictionary/english/for](https://dictionary.cambridge.org/dictionary/english/for). "[F]or" thus conveys "focus on the *entire* 'action[]'" as opposed to an incidental request for injunctive relief tacked onto a damages suit. *Bastami*, 2017 WL 1354148, at *8 (emphasis added).

36

Thus, Judge Lucy Koh has held that "the plain meaning" of the contractual phrase "actions *for* injunctive or other equitable relief" in a forum-selection clause "does not expand the exception to '*any* actions in which injunctive or other equitable relief is sought.'" *Bastami*, 2017 WL 1354148, at \*8 (emphasis added). "It would be a strained interpretation of the injunctive or equitable relief exception and its focus on the *entire* 'action[ ]' to find that a prayer for injunctive or equitable relief that is not the primary or predominant relief sought in the suit still transforms the *entire* suit into an 'action[ ] for injunctive or other equitable relief.'" *Id.* (emphases added).

Similarly here, the language "action by a party *for* temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief" (ER-91) means that "the 'action[]' itself should be for" such relief, *Bastami*, 2017 WL 1354148, at \*8. Plaintiff's suit is not that. Like the complaint in *Bastami*, Plaintiff's Complaint only "includes a prayer for injunctive or equitable relief in the complaint that is not the primary or predominant relief sought." *Id.* The Complaint is devoid of any allegations concerning injunctive relief other than boilerplate allegations. *See supra* p. 5. Such an action is not one *for* injunctive

37

relief. *See, e.g.*, *Bastami*, 2017 WL 1354148, at \*8; *Davis*, 2017 WL 11921334, at \*3 (exception for "action *for* declaratory or equitable relief" did not apply to statutory claims seeking recission as a remedy (emphasis added)). Nor did Plaintiff move for a preliminary injunction or TRO below. *See Brown & Root Indus. Servs., LLC v. Brown*, 2024 WL 4595597, at \*3–4 (M.D. La. Oct. 28, 2024) ("Because [the parties opposing arbitration] merely mention temporary injunctive relief and have never taken any steps to actually obtain it, the Court finds that the exception" for "temporary relief" "does not apply to this action.").

The word "for" also distinguishes the Provisional Relief Exception from the Fifth Circuit's decision in *Archer*, on which the district court relied. (ER-18.) The arbitration provision in *Archer* provided that "[a]ny dispute arising under or related to this Agreement (except for actions *seeking* injunctive relief …) shall be resolved by binding arbitration[.]" 935 F.3d at 277 (emphasis added). In addition to the other differences discussed *infra* pp. 42–44, "seeking" is different than "for." "Seeking" means "to ask for." *Seeking*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seeking. Thus, the phrase "actions *seeking* injunctive relief," *Archer*, 935 F.3d at 277, might more

38

reasonably be read to mean "any actions in which injunctive or other equitable relief is sought," *Bastami*, 2017 WL 1354148, at \*8 (emphasis added).  By contrast, "an action by a party *for*" provisional relief in the Provisional Relief Exception (ER-91) conveys that the "focus on the *entire* 'action[ ]'" must be provisional relief, *Bastami*, 2017 WL 1354148, at \*8; *see also Davis*, 2017 WL 11921334, at \*3.

> ### d. "Temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief"

Finally, the district court incorrectly equated the Provisional Relief Exception's phrase "temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief" with "injunctive relief" generally.  (*See* ER-16 (characterizing the Provisional Relief Exception as "an action by a party for … injunctive relief" (omission in original)).)  In so doing, the court read important textual nuance out of the contract.

"When a word appears in a list of similar terms, each term should be read in light of characteristics shared by the entire list." *Maner v. Dignity Health*, 9 F.4th 1114, 1123 (9th Cir. 2021).  Here, the word "other" before "provisional relief" at the end of the clause indicates that the entire

39

clause—including "temporary, preliminary, or permanent injunctive re-lief"—contemplates only various forms of *provisional* relief. *See Yates v. United States*, 574 U.S. 528, 545 (2015) ("Where general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." (cleaned up).).

"Provisional" means "[p]rovided *for the time being* to supply a place to be occupied in the end by some more permanent arrangement; *temporary* or conditional." *Provisional*, *Black's Law Dictionary* (12th ed. 2024) (emphasis added). And a "provisional injunction" is "[a] *temporary* injunction issued before or during trial to prevent an irreparable injury from occurring *before the court has a chance to decide the case.*" *Provisional Injunction*, *Black's Law Dictionary* (12th ed. 2024) (emphasis added). By definition then, an action for "provisional relief" does not encompass a final decision on the merits of an entire suit even if the complaint contains an incidental request for injunctive relief. *See Farr*, 2021 WL 2826709, at *6 (holding that judicial resolution of the requested injunction "will not aid the arbitration proceedings" and "hinges on the merits of plaintiff's claims"); *Baychar*, 2001 WL 856626, at *9 (declining

40

to rule on requested injunction where doing "essentially would be supplanting the role of the arbitrator").

Here, Plaintiff does not purport to seek provisional relief. Rather, Plaintiff asks the court decide her entire case, including claims that she concedes are otherwise in the heartland of the Arbitration Provision. Plaintiff cannot "circumvent the arbitration clause by simply seeking equitable remedies for claims that are squarely within the scope of matters to be arbitrated." *Davis*, 2017 WL 11921334 at *3 (emphasis added) (holding that a similarly worded exception—"action for declaratory or equitable relief, including, without limitation, seeking preliminary or permanent injunctive relief, specific performance, [or] other relief in the nature of equity to enjoin any harm or threat of harm"—did not encompass the plaintiff's suit for damages and rescission). Plaintiff's "passing reference to a demand for a preliminary injunction does not convert a standard complaint into a proceeding seeking the 'temporary,' 'preliminary,' 'interim or conservatory relief' contemplated by the 'Equitable Relief'

provision of the arbitration clause." *TravelClick, Inc. v. Open Hosp. Inc.*, 2004 WL 1687204, at *5 (S.D.N.Y. July 27, 2004).[10]

* * *

Read together, the plain text—"an action by a party for temporary, preliminary, or permanent injunctive relief, whether prohibitive or man- datory, or other provisional relief"—does not apply to Plaintiff's other- wise arbitrable suit for damages with an incidental request for injunctive relief. To the extent the Court finds that the Provisional Relief Exception is ambiguous, any such ambiguity must be resolved to compel arbitration. *See Comedy Club*, 553 F.3d at 1284; *AT & T Techs.*, 475 U.S. at 650.

### 2. The District Court's Reading Is Inconsistent with the Syntax of the Arbitration Provision

The district court's reading is inconsistent with the syntax of the Arbitration Provision, which confirms that the Provisional Relief Excep- tion does not encompass Plaintiff's suit. In following the Fifth Circuit's decision in *Archer*, the district court ignored the differences in syntax. The contract there provided:

> Any dispute arising under or related to this Agreement (*except for actions seeking injunctive relief* and disputes related to

---

[10] The phrase "whether prohibitive or mandatory" merely clarifies the type of provisional relief that the parties may seek. (ER-91.)

> trademarks, trade secrets, or other intellectual property of
> Pelton & Crane), shall be resolved by binding arbitration[.]

*Archer*, 935 F.3d at 277 (emphasis added). *Archer* held that the phrase "except for actions seeking injunctive relief" was unambiguous and encompassed "a complaint seeking both injunctive relief and damages." *Id.* at 280–83.

However, *Archer* found that the "*placement* of the carve-out [wa]s dispositive" in deciding whether the parties had delegated decisions of arbitrability. *Archer*, 935 F.3d at 281 (emphasis added). Unlike the Provisional Relief Exception, the exception in *Archer* was set in a parenthetical immediately offset from "[a]ny dispute arising under or related to this Agreement." *Id.* at 277. The Fifth Circuit held that "[t]he most natural reading" based on that syntax was "that any dispute, except actions seeking injunctive relief, shall be resolved in arbitration in accordance with the AAA rules." *Id.* at 281.

Because of the "difference" in "syntax," 935 F.3d at 281, *Archer* distinguished *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249 (5th Cir. 2014), which held that the plaintiff's claims "seeking damages and … injunctive relief" were subject to arbitration despite a textually similar exception in the arbitration agreement's delegation clause,

43

*id.* at 249, 253, 262–63. The *Crawford* arbitration provision began, "Any and all disputes in connection with or arising out of the Provider Agreement by the parties will be exclusively settled by arbitration." *Id.* at 256. Rather than set a parenthetical exception from "any and all disputes," *cf. Archer*, 935 F.3d at 277, the *Crawford* provision concluded *many sentences later*, "nothing in this provision shall prevent either party from seeking injunctive relief for breach of this Provider Agreement in any state or federal court of law," *Crawford*, 748 F.3d at 256.

Here, the "placement" of the Provisional Relief Exception is unlike *Archer* and like *Crawford*. The first sentence of the Arbitration Provision provides that "[a]ny dispute relating in any way to [a user's] visit to, or use of, the Website … shall be submitted to confidential arbitration[.]" (ER-91.) *Seven sentences later*, the Arbitration Provision states: "Notwithstanding the foregoing, the following shall not be subject to arbitration and may be adjudicated only in the state and federal courts of California: … (ii) an action by a party for temporary, preliminary, or permanent injunctive relief, whether prohibitive or mandatory, or other provisional relief." (*Id.*)

44

Thus, unlike the immediately subsequent parenthetical in *Archer*, the Provisional Relief Exception "does not *explicitly* except claims for equitable relief from the scope of the broad arbitration clause." *DXP Enterprises, Inc. v. Goulds Pumps, Inc.*, 2014 WL 5682465, at \*4 (S.D. Tex. Nov. 4, 2014) (emphasis added). It unreasonable to read "notwithstanding the foregoing" in the eighth sentence of the Arbitration Provision to modify the first sentence's subjecting "any dispute relating in any way to" Fashion Nova's website or products to arbitration.[11]

"The FAA does not permit such an expansive reading" of the effect of the Provisional Relief Exception, *DXP Enterprises*, 2014 WL 5682465, at \*4; "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail," *AT&T Techs.*, 475 U.S. at 650 (citation omitted). Accordingly, courts have held that "[c]lauses that 'simply state that parties can ask courts for injunctive relief 'notwithstanding' an agreement to arbitrate"—like the Provisional Relief Exception—"do not

---

[11] The district court relied on a notice at the beginning of the Terms: "ARBITRATION IS MANDATORY AND THE EXCLUSIVE REMEDY FOR ANY AND ALL DISPUTES *UNLESS SPECIFIED BELOW* OR IF YOU OPT-OUT." (ER-16 (quoting ER-90).) That language does not clarify which types of disputes are not subject to arbitration.

45

sufficiently show that the claims for permanent injunctive relief are nonarbitrable." *DXP Enterprises*, 2014 WL 5682465, at *7.

Read as a whole, the syntax of the Arbitration Provision indicates that all disputes relating to Fashion Nova's website—including "request[s] [for] permanent injunctive relief that would require the court to consider and decide the merits of an arbitrable claim"—must be arbitrated, but the parties retain the right to pursue limited requests for injunctive relief in court. *DXP Enterprises*, 2014 WL 5682465, at *5 (citing cases); *see also Dohrmann*, 823 F. App'x at 484.

### 3. The District Court's Reading Ignores the Rest of the Contract and Produces Absurd Results

It is a "cardinal principle of contract construction[] that a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995). The district court's reading vitiates the Arbitration Clause—which subjects "any and all disputes relating to" Fashion Nova's website or products to arbitration (ER-91)—by allowing any plainly arbitrable dispute seeking damages to go to court based on nothing more than a *pro forma* request for injunctive relief.

46

The district court recognized this "[t]ension between the arbitration and carveout provisions" but mistakenly concluded its hands were tied based on its erroneous finding that the text of the Provisional Relief Exception *unambiguously* encompassed Plaintiff's entire case. (ER-18.) As detailed *supra* Section II.C.1, however, the plain text of the Provisional Relief Exception does not apply to Plaintiff's suit. At best, the text is ambiguous, and ambiguities must be resolved in favor of arbitration. *See supra* pp. 8, 20–21, 42.

In any case, the district court's myopic approach runs afoul of this Court's admonition that the "'written terms alone'" must govern only "when the 'contract language is clear and explicit and *does not lead to absurd results*.'" *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020) (emphasis in original) (quoting *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 831 (2007)); *see also* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."). Here, the district court's reading produces the absurd result that a plaintiff can "transform[] arbitrable claims into nonarbitrable [claims]" simply by a pleading gambit. *Baldwin Tech. Co. v. Printers' Serv., Inc.*, 2016 WL 354914, at

47

*3, n.4 (S.D.N.Y. Jan. 27, 2016) (citation omitted). This is not just a matter of encouraging gamesmanship. Such a broad reading of the "exception would swallow the rule." *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 655 (2001). That result is especially incongruous given the intentional broadness of the Arbitration Clause. *See supra* Section II.B. "It would make little sense to include such an expansive loophole in what is otherwise a sweeping arbitration provision." *Farr*, 2021 WL 2826709, at *4 (citation omitted).

Numerous courts have declined to adopt such an absurd reading of similar injunctive relief provisions. *See Farr*, 2021 WL 2826709, at *4 ("[A]bsurd results follow from plaintiff's reading. A consumer seeking any form of equitable relief could circumvent arbitration, even where, as here, such relief is predicated on a dispute presumably falling within the scope of the arbitration agreement."); *Baldwin*, 2016 WL 354914, at *3 n.4 (declining to "transform[] arbitrable claims into nonarbitrable ones depending on the form of relief prayed" (citation omitted)); *Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.*, 2014 WL 562264, at *12 (E.D. Mich. Feb. 13, 2014) ("Although the parties included a 'carve out' provision allowing for either side to seek injunctive relief outside the arbitral

48

process, that provision should not be read so broadly as to render the mandatory arbitration provision a nullity."); *Info. Sys. Audit & Control Ass'n v. TeleComm. Sys. Inc.*, 2017 WL 2720433, at *4 (N.D. Ill. June 23, 2013) (declining to adopt an "untenable" "interpretation of the equitable relief exception" that "would permit a party to obtain from a court essentially the same relief as that otherwise reserved for the arbitrator").

By contrast, reading the Provisional Relief Exception to permit courts to issue only limited provisional or injunctive relief "brings the arbitration provision and the exception at issue into harmony with each other and the federal policy favoring arbitration." *Davis*, 2017 WL 11921334, at *3. The Arbitration Clause plainly requires the merits of "any and all disputes" to go to arbitration, including Plaintiff's challenge to Fashion Nova's online pricing practices. (ER-91.) As this Court has recognized, however, the FAA "provides a court with the ability to stay 'trial of [an] action until such arbitration has been had,' but it does not give a court the authority to issue equitable remedies, such as a temporary injunction, to maintain the status quo between the parties." *Comedy Club*, 553 F.3d at 1287 (quoting 9 U.S.C. § 3). In light of this scheme, "it makes sense that if the parties wanted to give themselves the ability to

49

seek temporary equitable remedies in courts while arbitration was ongoing, they would add such a clause to the arbitration agreement." *Comedy Club*, 553 F.3d at 1286; *see also Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 980 (9th Cir. 2010) (recognizing that courts may grant "injunctive relief to maintain the status quo until an arbitration panel c[an] address [a] request for interim relief").[12]

Consistent with this Court's rulings in *Comedy Club* and *Dohrmann*, numerous courts have read similar provisions to permit them to grant only limited injunctive relief, not issue a decision on the merits of the entire suit. *See, e.g.*, *Remy Amerique*, 816 F. Supp. at 218 (exception "make[s] injunctive relief in judicial courts of proper jurisdiction available to the parties in aid of arbitration, rather than … transform[s]

---

[12] Such an approach is also consistent with California law, under which "[a] party *to an arbitration agreement* may file in . . . court . . . an application for a provisional remedy *in connection with an arbitrable controversy*, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." Cal. Code Civ. Proc. § 1281.8(b) (emphasis added); *see also Woolley v. Embassy Suites, Inc.*, 227 Cal. App. 3d 1520, 1527 (1991) (noting "Section 1281.8 was enacted primarily to allow a party to an arbitration to obtain provisional judicial remedies *without waiving the right to arbitrate*" and "to ensure that the court does not invade the province of the arbitrator— i.e., the court should be empowered to grant provisional relief in an arbitrable controversy only where the arbitrator's award may not be adequate to make the aggrieved party whole").

arbitrable claims into nonarbitrable ones depending on the form of relief prayed for"). That includes "temporary" or "preliminary" relief to preserve the status quo pending arbitration of the merits (ER-91). *See Trav-elClick*, 2004 WL 1687204, at *5 (interpreting similar language as a "narrow exception … that allows the parties to turn to the courts in emergency circumstances to preserve the status quo while the parties seek permanent resolution outside the court system"); *Baychar*, 2001 WL 856626, at *9 (exception limited to allow "a court [to] issue a preliminary injunction to protect the status quo in order to ensure that the arbitration serves a productive purpose"). It also includes "permanent" injunctive relief after the arbitrator has entered an award (ER-91). *See, e.g., Stations W., LLC v. Pinnacle Bank of Oregon*, 2007 WL 1219952, at *6 (D. Or. Apr. 23, 2007), *aff'd*, 338 F. App'x 658 (9th Cir. 2009) ("Plaintiff's request for any equitable relief will be relevant after the arbitrator issues a decision on the merits of the dispute."); *Brown v. DetailXPerts Franchise Sys., LLC*, 2018 WL 11295029, at *4 (N.D. Cal. Sept. 12, 2018) ("Because Plaintiffs' suit attacks the validity of the Franchise Agreement, it must be arbitrated, even if Plaintiffs may have the right to seek injunctive relief from a court following that determination."); *Fraser v.*

51

*Brightstar Franchising, LLC*, 2016 WL 6442185, at \*2 (N.D. Ill. Nov. 1, 2016) ("The equitable relief referenced in the Franchise Agreement that ultimately may need to be obtained from a court would be the type of injunctive relief that would be sought in enforcement proceedings after the mediation/arbitration procedure has been followed.").

The Arbitration Provision was clearly intended to subject the merits of all possible consumer disputes, including Plaintiff's, to arbitration; it is not faithful to the agreement or the federal presumption in favor of arbitrability to read one limited exception to swallow the whole rule.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order denying Fashion Nova's motion to compel arbitration.

Respectfully submitted,

Dated: April 28, 2025

/s/ *Julia Hu*

JULIA HU
Wilson Sonsini
Goodrich & Rosati, P.C.
953 East Third Street
Los Angeles, CA 90013
julia.hu@wsgr.com

*Counsel for Defendant-Appellant Fashion Nova, LLC*

52

## STATEMENT OF RELATED CASES UNDER
## CIRCUIT RULE 28-2.6

No other cases presently pending in this Court are deemed related

to the present case under Ninth Circuit Rule 28-2.6.

Dated: April 28, 2025

*/s/ Julia Hu*

Julia Hu
*Counsel for Defendant-Appellant*
*Fashion Nova, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-1032

I am the attorney or self-represented party.

**This brief contains** 10,815 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

🔘 complies with the word limit of Cir. R. 32-1.

⭘ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⭘ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

⭘ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

⭘ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
- ☐ it is a joint brief submitted by separately represented parties.
- ☐ a party or parties are filing a single brief in response to multiple briefs.
- ☐ a party or parties are filing a single brief in response to a longer joint brief.

⭘ complies with the length limit designated by court order dated _____.

⭘ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Julia Hu    **Date** April 28, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*